IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD D. BANKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 09-621-GPM |
| | ) |
| BOARD OF TRUSTEES OF SOUTHERN | ) |
| ILLINOIS UNIVERSITY, SOUTHERN | ) |
| ILLINOIS UNIVERSITY- | ) |
| EDWARDSVILLE, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Before the Court is the Motion for Summary Judgment (Doc. 31) and the Supplemental Request for Entry of Summary Judgment (Doc. 35), filed by the Board of Trustees of Southern Illinois University and Southern Illinois University-Edwardsville (the Board). Plaintiff Ronald Banks' (Banks) response was due on August 25, 2010. On Friday, October 1, 2010, over five weeks past the deadline, Banks filed a Motion for Leave to File a Response in Opposition (Doc. 36) to the Boards' Motion for Summary Judgment. On October 4, 2010, the Court held a hearing on all pending motions. In spite of his tardiness, the Court orally **GRANTED** Banks' Motion for Leave to File a Response (Doc. 40). After hearing arguments from both parties, the Court also **GRANTED** the Board's Motion for Summary Judgement (Doc. 31), and its Supplemental Motion for entry of the same (Doc. 35). At the hearing, the Court noted that because Banks failed to file a response until long after the deadline, summary judgment could have been granted on procedural grounds.

Nevertheless, this Court, along with the Court of Appeals, has expressed a preference for determining cases on substantive, rather than procedural, grounds whenever possible. For the reasons outlined below, the Boards' Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

On summary judgment, the Court considers the facts in a light most favorable to the non-moving party and adopts reasonable inferences and resolves doubts in favor of that party. *Nat'l Athletic Sportswear, Inc., v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008). After being hired by Southern Illinois University (SIU)–Carbondale in 1989 as an Assistant Instructor in the Minority Engineering Program, Plaintiff Ronald Banks (Banks) became an Assistant to the Dean in the School of Engineering at SIU-Edwardsville in March 1994. This was a non-faculty position. Allegedly, Banks was the only African-American male working in his office. In 2006, Dr. Hasan Sevim was named as the Dean of the School of Engineering (the School) for SIU-Edwardsville. After receiving his appointment as the School's top administrator, Dean Sevim began an overall review of the School. During this same period, a new Provost, Dr. Paul Ferguson, was named as the Chief Academic Officer of SIU-Edwardsville. The new Provost also started an initiative to centralize recruiting efforts at the University-wide level. In October 2007, Banks was first notified of restructuring plans for the Engineering Department (the Department), and that his position would be eliminated in a year. Banks remained on staff and, allegedly, was given minimal responsibilities until October 2008. In February 2008, Banks filed an internal grievance regarding the University's decision to eliminate his position. In this grievance, Banks did not make any allegations of discrimination. After his grievance was denied as untimely, Banks filed a Charge of Discrimination in April 2008. Banks filed the present action on August 14, 2009.

## **ANALYSIS**

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial…. A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted). As will be discussed in greater detail below, here, Banks has not met his burden of presenting any "definite, competent evidence to rebut the [Board's] motion." *Id*. As a result, the Board is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c)

Banks brought this action pursuant to Title VII of the Civil Rights Act of 1964, and the Illinois Human Rights Act (775 ILCS 5/1-101, *et seq.*), alleging race, color, and age discrimination, after SIU-Edwardsville (the University) eliminated his position as "Assistant to the Dean of the School of Engineering"—a non-faculty position—during an organizational restructuring.[1] For the reasons outlined briefly below, there are no genuine issues of material fact, and Banks' claims are without merit.

---

[1] At the hearing, Banks dropped his claim of age-based discrimination under the Illinois Human Rights Act (IHRA). The Court notes that Banks remaining "[c]laims under the [IHRA] are analyzed under the same standards as Title VII claims." *Cooper v. Ill. Dept. of Natural Resources*, 2010 U.S. Dist. Lexis 52727 at *5-6, n 1 (C.D. Ill. May 26, 2010), *citing Bd. Of Trustees of S.Ill.Univ. v. Knight*, 516 N.E.2d 991, 995 (Ill. App. Ct. 1987). Banks also admitted at the hearing that he lacked any direct evidence of race or color-based discrimination.

Once again, to defeat the Board's Motion for Summary Judgment, Banks "cannot rest on the mere allegations contained in [his] pleadings but 'must present sufficient evidence to show the existence of each element of its case on which [he] will bear the burden at trial.'" *Fillipovic v. K&R Exp. Sys., Inc.*, 176 F.3d 390, 395 (7th Cir. 1999), *quoting Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995). Normally, a plaintiff may prove discrimination by presenting either direct (including circumstantial) evidence of discrimination or by the indirect method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, Banks admits that he has no direct evidence of discrimination. As a result, he must rely upon the *McDonnell Douglas*, indirect burden-shifting test.

> Under the *McDonnell Douglas* approach, a plaintiff-employee must first establish a *prima facie* case of discrimination. This requires proof of four elements: (1) the employee is a member of the protected class … (2) the employee was performing at a satisfactory level; (3) the employee was subject to an adverse employment action; and (4) the employee was treated less favorable than … similarly situated employees. If the plaintiff succeeds in making out a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. If such a reason is offered, the plaintiff … bears the ultimate burden of showing that it is a pretext for discrimination.

*Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 574 (7th Cir. 2003) (quotations and citations omitted).

Here, it is very unlikely that Banks could establish a *prima facie* case of discrimination. Perhaps most notably, Banks was not replaced by a younger or white employee. Rather, his position was *eliminated*, and as a result, there is no one who currently holds the position of "Assistant to the Dean" (Doc. 32, p. 1). Further, Banks was given one full year's notice that his position would be eliminated, even though, according to University policy, no notice is required when a position is being eliminated due to reorganization (*Id.* at 2, 7). During that year, Banks only was required to

perform minimal duties so that he could search and apply for other opportunities and/or pursue his Ph.D. (*Id.*). Nevertheless, Banks allegedly applied for only one other open position at the University (*Id.* at 7-8). Banks also filed an internal grievance regarding the University's decision to eliminate his position—a grievance in which, tellingly, Banks "*did not make any allegations of discrimination.*" (Doc. 32, p. 8). Only after this internal grievance was denied, did Banks choose to file a Charge of Discrimination (*Id.*). In sum, Banks' actions during the year in which he knew his position was going to be eliminated, belie his claims of discrimination based on disparate treatment.

"A similarly situated employee is one who is 'directly comparable to [the plaintiff] in all material respects.'" *Bio v. Federal Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005), *quoting Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). A court evaluates whether two employees are directly comparable by looking at all relevant factors, including (but not limited to): their job descriptions, job standards, who they reported to, and background qualifications, such as work experience and education. *Id.*

Here, Banks argues that "[t]here were a number of white university employees who received assistance from the [Board] in finding other positions or jobs when theirs had been eliminated" (Doc. 39, p. 3). Banks then goes on to list a number of white employees that he claims were "situated similarly to the Plaintiff" (*Id.*). However, nowhere does Banks go beyond this conclusory statement and allege exactly how, "in all material respects" these other employees were similarly situated. *See Bio*, 424 F.3d at 597. As such, no relevant facts or factors have been alleged from which the Court can draw the reasonable inference that Banks was, in fact, treated less favorably than *similarly situated* white employees.

Moreover, even assuming, *arguendo*, that Banks could establish a *prima facie* case of discrimination, the University has provided uncontested, legitimate, nondiscriminatory reasons for the elimination of Banks' position. After the new Dean of the School of Engineering (the new Dean) was appointed in 2006, he "began an overall review of the School of Engineering" (*Id.* at 3). During this time period, the University also named a new Provost, or "chief academic officer," who began an effort "to centralize advising and retention efforts on a campus level, rather than ... a School level" (*Id.* at 4). This is important because Banks' primary responsibility was diversity recruiting for the School of Engineering (*Id.* at 5). During his review, the new Dean found that "the School of Engineering's enrollment of minority and female students had actually declined in recent years." (*Id.*). In other words, there was evidence that Banks' was not performing his job responsibilities well. After soliciting and receiving further input from Banks regarding his job responsibilities, the new Dean also realized that Banks' position was largely duplicative of the recruiting efforts that now would be handled by the University's Office of Enrollment." (*Id.* at 5-6). None of these claims have been contested by Banks.

As a result, based on his own internal review, and upon the new Provost's expressed preference for centralized recruiting, the new Dean decided to eliminate Banks' position along with various other staff members. (*Id.* at 6). Notably, the new Dean eventually hired an African-American female to fill a newly created student advising position within the School of Engineering—the position most analogous to Banks' former position. (*Id.*). Further, during this same time period, the new Dean allegedly terminated a caucasian female who was not performing adequately. In light of the foregoing, the Board provided a significant amount of credible evidence that Banks' position was eliminated for legitimate, nondiscriminatory reasons; namely, poor job

performance, and unnecessary duplication due to a University-wide structural reorganization. In response, Banks' failed to provide any evidence whatsoever that the University's legitimate, non-discriminatory reasons for eliminating his position were merely pretextual. Because Banks failed to his "ultimate burden" under *McDonnell Douglas*, Summary judgment for the Board is appropriate.

## CONCLUSION

In conclusion, Banks claims of discrimination have no merit and judgment for the Board is appropriate, as a matter of law. Therefore, the Court **GRANTS** the both the Boards' Motion for Summary Judgment (Doc. 31), and its Supplemental Request for Entry of Summary Judgment (Doc. 35). The Court therefore **DISMISSES with prejudice** Banks' First Amended Complaint (Doc. 27) against the Board, in its entirety.

**IT IS SO ORDERED.**

DATED: 10/13/10

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge